**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Henry Ekweani and Ijeamaka Ekweani, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>Ameriprise Financial, Inc.,<br><br>    Defendant. | No. CV-08-01101-PHX-FJM<br><br>**ORDER** |

Plaintiff Henry Ekweani brings this employment discrimination and retaliation action against defendant Ameriprise Financial, Inc. The court has before it defendant's motion for summary judgment (doc. 97), plaintiff's response (doc. 101), and defendant's reply (doc. 108). We also have before us plaintiff's motion for leave to file a surreply (doc. 113), as well as plaintiff's motion for sanctions (doc. 99), defendant's response (doc. 105), and plaintiff's reply (doc. 110).

As an initial matter, we deny plaintiff's motion for leave to file a surreply. He contends that an additional brief is necessary to respond to undisclosed evidence raised in defendant's reply. However, we do not consider undisclosed evidence. He also would like to correct defendant's representation of plaintiff's statement of facts. Plaintiff's statement of facts does not require any clarification.

**I. Background**

A black economist from Nigeria, plaintiff was employed by defendant and its corporate predecessors from 2003 until his termination in May 2007. He worked in Phoenix as a senior econometrician in the Asset and Information Management division ("AIM"), which uses economic modeling to support internal business partners' risk management and product development. In 2005, after defendant spun off from American Express, AIM had about fifty employees with around eleven at the director level or higher. In August 2005, plaintiff applied for a director position in AIM under Vice President of Financial Products and Services Vince Byron. Another AIM senior econometrician, William Janss, also applied, along with four other internal candidates and forty-four external candidates. According to the job posting, the preferred qualifications for the position included a relevant doctoral degree, "excellent communication and collaboration skills," and "5-7 years of relevant prior experience developing and managing Risk and/or Marketing capabilities." DSOF, Ex. 8 at 2. Both plaintiff and Janss, who is white, were among the ten candidates selected for an interview. Plaintiff had a Ph.D. and about ten years of relevant work experience to offer, while Janss's resume listed Ph.D. candidacy and three and a half years of relevant work experience. Byron and Mark Satran, a co-leader of AIM, interviewed the internal candidates and promoted Janss instead of plaintiff. Defendant alleges that plaintiff's communication skills rendered him unqualified and Janss was the best candidate.

After Janss's promotion, plaintiff, David Suarez, and one other colleague reported to Janss. Janss reported to Byron, who reported to James Jensen, the other AIM co-leader with Satran. AIM as a whole was below Bill Williams, a member of senior management in defendant's Minneapolis headquarters.

Plaintiff's relationship with defendant deteriorated in 2006. By mid-September, his supervisors were about to place him on an improvement plan with human resources. Plaintiff alleges it was because he complained of race discrimination in July. Defendant alleges it was because of his performance, including a lack of respect for the chain of command and problems with communicating effectively.

Plaintiff received his 2005 performance review in January 2006. He was not happy with it. It was generally positive and suggested that he improve his communication skills. In May, there were tense moments with his new supervisor, Janss. Construing the evidence in plaintiff's favor, he and Suarez, advocated a demand-based approach to a modeling project, for which plaintiff was amassing internal support, only to meet resistance from Janss. In early May, Janss seemed uneasy with plaintiff setting up meetings with potential supporters in advance of a team trip to Minneapolis. Plaintiff described the project's value in an email to Janss and challenged him to stop his efforts. During the trip, without Janss's approval, Suarez sought a meeting with Williams, who was four levels higher in the chain of command, to discuss the demand-based approach. As it turned out, Janss met with Williams before Suarez and plaintiff arrived at his office. Whether it was due to input from Janss or Jensen, or both, management decided to put the brakes on the demand-based approach, citing a lack of support. Once back in Phoenix, Janss called a meeting and, visibly upset, suggested that those who were not on board should transfer out of the group.

During a meeting with Byron in early July 2006, plaintiff brought up concerns with his 2005 performance review and his non-selection for the promotion for the first time. He complained that these decisions were not objectively based on the exact work he performed and, instead, were unfairly based on subjective measures. He alleges that he told Byron that the review and the promotion decision "were not based on objective factors, were not an accurate reflection of my contributions to the Company, and were unfair. Specifically, the subjective and unfair factor that I was referring to was my race." PSOF, Ex. A at 3.

Shortly thereafter, plaintiff received a mid-year performance review for 2006. It described his performance positively. It also recommended that he focus on concrete deliverables, business partners' needs, and communication. Management criticized the communication skills of Janss's team a month later. In August 2006, plaintiff delivered some project results to a vice president in Minneapolis. The vice president believed that the results were not presented effectively, and she communicated her concern to Jensen, an AIM co-

leader. When Janss confronted plaintiff with the issue, he was incredulous and failed to accept responsibility.

Matters evidently came to a head in September 2006. In late August, Williams wanted a comparison between a proposal by a third-party vendor and AIM's in-house capabilities. Janss asked plaintiff and Suarez to review the matter. In mid-September, plaintiff emailed Williams and Jensen, Byron's supervisor, a comparison without copying Byron or Janss. He suggested that AIM's in-house efforts compared favorably to what the vendor was offering. Janss apparently knew about the comparison and knew it was being sent to Williams. It was not well received. Jensen responded in an email to Williams that he was "Very surprised and disappointed to see this" and "This is clearly not what I've asked for nor need from Henry nor anyone else on my team at this point." DSOF, Ex. 16 at 1.

In a September 21, 2006 meeting with plaintiff, Byron and Janss told him that his email made them look bad and him appear biased against the vendor. They informed him that they were going to develop a communication improvement plan for him, with the help of human resources, and he was not to communicate with senior management or business partners without their approval. They also cancelled plaintiff's upcoming trip to Minneapolis. In an email to Jensen the next day, Byron recounted a discussion with human resources concerning performance warnings and how to implement a formal performance plan with two ninety-day periods prior to termination. He also summarized the meeting with plaintiff as involving a discussion of a "continued pattern of below expectation performance." Id., Ex. 17 at 1. Plaintiff disputes this account of the meeting. He says that the envisioned plan was called a communication improvement plan and not one for performance. We accept plaintiff's account of the meeting.[1]

---

[1] Plaintiff objects to the admission of Byron's summary email on the grounds that it is unauthenticated and hearsay if used to prove the substance of what he was told in the meeting. We reject plaintiff's objections because he concedes that Byron wrote the email and it is not being admitted to prove what he was told. PSOF ¶ 58.

- 4 -

On September 25, 2006, plaintiff filed an internal discrimination complaint alleging race and national origin discrimination by Byron and Janss. He alleged disparate treatment based on his non-selection for a promotion, his performance reviews, an uncomfortable working environment, and efforts to discount his contributions and reduce his responsibilities. Defendant conducted an internal investigation and concluded that the complaint was unsubstantiated. After a delay to complete the investigation, plaintiff was given a written ninety-day warning on December 8, 2006. It touched on the above performance issues, among others.

On February 8, 2007, plaintiff submitted a response collecting many of the emails referenced above. The next day, without an opportunity to review plaintiff's response, Janss gave plaintiff his 2006 performance review. He received a below expectations rating. As a part of the review process, AIM employees solicited performance evaluations from business partners to provide supervisors with feedback for their reviews. Plaintiff's review included several critical comments about his communication skills submitted by business partners. He was given another written warning on March 26, 2007, which announced a final warning period to end on May 25, 2007. Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on May 15, 2007. Defendant terminated plaintiff on May 29, 2007, despite some concerns about the timing of the EEOC charge voiced by Amy Roeloffs, a member of human resources.

Plaintiff alleges discriminatory failure to promote in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, retaliation in violation of § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and disparate treatment under Title VII with respect to his written warnings and negative performance review. Defendant moves for summary judgment on all of plaintiff's claims and raises a partial affirmative defense concerning after-acquired evidence.

## II. Failure to Promote

Plaintiff claims that his non-selection for a promotion in 2005 was impermissibly based on his race and national origin in violation of 42 U.S.C. § 1981. Because § 1981 does

1 | not cover national origin discrimination, we do not consider that portion of plaintiff's claim.
2 | Manatt v. Bank of America, N.A., 339 F.3d 792, 798 (9th Cir. 2003). The parties rely on the
3 | burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct.
4 | 1817 (1973), which applies to § 1981 claims. See Manatt, 339 F.3d at 798. To survive
5 | summary judgment, plaintiff must first show that he belongs to a protected class, he was
6 | qualified for the position, his application was rejected, and a similarly situated individual
7 | outside of his protected class was treated more favorably. See Godwin v. Hunt Wesson, Inc.,
8 | 150 F.3d 1217, 1220 (9th Cir. 1998). If plaintiff establishes his prima facie case, and the
9 | evidentiary threshold to do so is low, the burden of production shifts to defendant to
10 | articulate a legitimate nondiscriminatory reason for the challenged action. Id. If it can,
11 | plaintiff must then demonstrate that this reason is pretext for discrimination, "either directly
12 | by persuading the court that a discriminatory reason more likely motivated the employer or
13 | indirectly by showing that the employer's proffered explanation is unworthy of credence."
14 | Id. (citation omitted). Indirect evidence must be specific and substantial. Id. at 1222. But
15 | cf. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1030-31 (9th Cir. 2006) (holding
16 | that indirect evidence need not be more or better than direct evidence).

17 |       Defendant initially disputes plaintiff's ability to establish his prima facie case on the
18 | grounds that he was not qualified for the position because he lacked excellent communication
19 | and collaborative skills. Defendant's proffered job posting lists these skills as preferred and
20 | not as required qualifications. Nonetheless, plaintiff admits that they were required. A
21 | former economics professor, plaintiff also admits that a past supervisor commented in a
22 | performance review to the effect that plaintiff "had some problems with his business
23 | communication skills because he communicated too much like an academic." PSOF ¶ 39.
24 | The only other evidence defendant presents on this issue is testimony from Satran, one of the
25 | two interviewers, that plaintiff lacked the requisite skills based on feedback Satran received
26 | from three individuals during the evaluation process, but he cannot recall any specifics from
27 | these conversations. See DSOF, Ex. 6 at 50-52. Ones of these individuals, Byron, the other
28 | interviewer, apparently recalls his interviews with several candidates in some detail. See id.,

Ex. 3 at 74-77. But defendant does not submit any testimony from Byron concerning his impression of plaintiff during the evaluation process or from before. Byron was plaintiff's direct supervisor for several months leading up to the interview. Plaintiff points out that he was one of ten people selected for an interview out of a pool of fifty applicants, which suggests that he was found to be qualified initially. We conclude that plaintiff has established his prima facie case.

In response, defendant identifies two legitimate nondiscriminatory reasons for its promotion decision: plaintiff's perceived lack of excellent communication and collaborative skills and the interviewers' conclusion that Janss was the best candidate. It relies on the above testimony from Satran to support the former and testimony from Byron concerning Janss's qualifications to support the latter. See id. at 74. Defendant has met its burden of production.

Plaintiff contends primarily that defendant's reasons are pretext for discrimination because he was more qualified than Janss.[2] "Facts tending to show that the chosen applicant may not have been the best person for the job" are probative of pretext because they suggest that the reasons provided may not have been the real motive for choosing one applicant over another. Godwin, 150 F.3d at 1222. Plaintiff offers his superior academic credentials and work experience as evidence that he was more qualified for the promotion than Janss.[3] The civil rights statutes do not proscribe the use of subjective employment criteria. Casillas v. U.S. Navy, 735 F.2d 338, 345 (9th Cir. 1984). A managerial position in a highly technical

---

[2] Initially, plaintiff claims that, because defendant did not offer his qualifications as a reason until recently, the shifting nature of defendant's explanations is evidence of pretext. The reasons articulated are plainly consistent. Thus, they are not probative of pretext merely because one came later. See Godwin, 150 F.3d at 1222.

[3] Plaintiff also offers evidence that Janss embellished his resume slightly. He contends that the interviewers would have made a different decision had they realized it, even though they did not. Under these circumstances, this evidence does not suggest that they did not believe Janss was the best candidate. We do not consider this evidence, and defendant's objections to it are moot.

- 7 -

field is a prime example of a job where business-communication skills might take precedence over other qualifications. Employment decisions are based on much more than placing one candidate's resume next to another's. Standing alone, the relative strength of plaintiff's credentials does not show that defendant's reasons are unworthy of credence.

However, as discussed above, defendant has offered a reason in this case for which there is little support in the record. It contends that the interviewers believed not only that plaintiff's communication skills were weaker than Janss's, but also that plaintiff was unqualified for the position because his skills were so deficient. Although plaintiff admits that his communication skills were mentioned in a prior review, there is no indication that the interviewers were aware of it. The interviewer who says that plaintiff was unqualified cannot give any specifics why. The other provides specifics on nearly every candidate but plaintiff. This is sufficient to allow a jury to find pretext.

Plaintiff also maintains that the absence of black employees at the director level or above in AIM is probative of pretext. Stark disparities in employment demographics may be evidence of pretext. Bergene v. Salt River Project Agric. Improvement & Power Dist., 272 F.3d 1136, 1143 (9th Cir. 2001). Defendant concedes that AIM did not have a black supervisor during the relevant time period. This information is not particularly useful given AIM's small size and plaintiff's failure to account for important factors such as how many AIM employees and applicants were black and how many positions were open. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1283 (9th Cir. 2000) (discussing the use of statistics in the context of an age discrimination claim).

The merits of plaintiff's failure to promote claim are far from compelling. At this stage, however, "very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1124 (9th Cir. 2004).

Because defendant has failed to support its reasons with evidence, we deny defendant's motion for summary judgment on plaintiff's § 1981 failure to promote claim.[4]

### III. Retaliation

Plaintiff also claims that defendant unlawfully retaliated against him for opposing its discriminatory practices under both Title VII, 42 U.S.C. § 2000e-3(a), and § 1981.[5] The parties again rely on the McDonnell Douglas framework. To state a prima facie case of retaliation, plaintiff must show that he engaged in protected activity, his employer subjected him to an adverse action, and the two events were causally linked. See Bergene, 272 F.3d at 1141. If he does so, defendant must articulate a legitimate nonretaliatory reason for the challenged action, and then plaintiff has the burden to demonstrate that defendant's reason is pretext for retaliation. Id.

Plaintiff asserts that he first engaged in protected activity when he complained about the use of subjective and unfair factors in employment decisions during the July 2006 meeting with Byron. The parties agree that his subsequent internal discrimination complaint on September 25, 2006 and EEOC charge on May 15, 2007 constitute protected activity. But defendant disputes plaintiff's reliance on the July 2006 meeting.

An employee need not utter magic words to put his employer on notice that he is complaining about unlawful discrimination. See Kitchen v. WSCO Petroleum Corp., 481 F. Supp. 2d 1136, 1145 (D. Or. 2007). Whether it is analyzed as a requirement for protected activity or under the element of causal link, however, an employer must reasonably be aware that its employee is engaging in protected activity. See Cohen v. Fred Meyer, Inc., 686 F.2d

---

[4] Plaintiff recently filed a motion requesting, in part, that defendant's motion for summary judgment on his promotion claim be denied under Rule 56(f), Fed. R. Civ. P. (doc. 122). It is not fully briefed. Because we deny defendant's motion on this claim on other grounds, we do not consider plaintiff's motion here.

[5] As above, plaintiff fails to recognize the difference in coverage between Title VII and § 1981 with respect to national origin, but the difference has no effect on his claims.

793, 796 (9th Cir. 1982) (discussing causal link). The July 2006 meeting did not put defendant on notice.

Plaintiff argues that he was referring to race when he complained about a subjective and unfair factor used during defendant's promotion and performance review processes. In his deposition, he explained that he was concerned with the use of such subjective factors as inaccurate portrayals of his projects' goals and their reception, unarticulated communication standards, and unwarranted suggestions for communicating effectively. See DSOF, Ex. 1 at 67-77, 83-86. In a July 12, 2006 email to Janss mentioning the meeting with Byron, plaintiff wrote "we must establish a means of achieving a performance review process that is objective and measurable on relative grounds and not based on ad hoc processes that can not be justified on relative grounds." Id., Ex. 12 at 1. Taking plaintiff at his word, that he was referring to race when he said subjective and unfair factors, there is insufficient evidence from which a reasonable trier of fact could conclude that defendant was aware plaintiff was complaining of unlawful discrimination during the July 2006 meeting. We confine our inquiry to plaintiff's September 25, 2006 and May 15, 2007 complaints.

Under the second element of his prima facie case, plaintiff contends that his written warnings, final projects, 2006 performance review, and termination were all adverse actions. Adverse actions by an employer are those "reasonably likely to deter employees from engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000). Defendant initially attempts to parse out some of the steps it took as insufficient to constitute adverse actions, but it largely abandons this effort in its reply. We assume each of these events qualifies.

Plaintiff maintains that defendant's actions were causally linked to his protected activity because the decline in defendant's opinion of his performance was unsupported by contemporaneous criticism and the timing of the actions was suspect. This claimed connection is attenuated at best. Defendant's documented issues with plaintiff began by May 2006, and they had crystalized before his first complaint in September. Although plaintiff's May 2007 termination came two weeks after he filed an EEOC charge, it coincided with the

end date of his final warning period, which was set in March 2007. However, because defendant drops its challenge to causation in its reply, we assume, without deciding, that plaintiff has established his prima facie case.

Defendant points to plaintiff's performance issues as legitimate nonretaliatory reasons for its adverse actions. These issues include plaintiff's conduct with respect to a modeling project in May 2006, communications with a business partner in August 2006, and a comparison sent to senior management in mid-September 2006. Emails collected by plaintiff and plaintiff's own statements corroborate these incidents. See <u>DSOF, Ex. 24</u>. Defendant has satisfied its burden of production.

Plaintiff first contends that defendant's reasons are pretext for retaliation because it was not critical of his performance until after his complaints of discrimination. His contention is not supported by the record. He emphasizes positive reviews received in January and July 2006 and points out that his supervisors did not envision placing him on an improvement plan before September 2006. Although generally laudatory, plaintiff's reviews contained increasingly pointed comments about improving his communication skills and his understanding of business partners' needs. Moreover, Janss was openly critical of what transpired during the May 2006 Minneapolis trip shortly after the team's return. Most significantly, Byron and Janss held a meeting with plaintiff just days after his email to senior management in September 2006 to explain their concerns. Plaintiff focuses on a perceived difference between communication and performance improvement plans, but it is clear that defendant planned to move forward with a plan addressing both before plaintiff first complained of discrimination on September 25, 2006. Defendant's pre-complaint criticism of plaintiff's conduct is consistent with its articulated reasons for the challenged actions.

Second, plaintiff contends that evidence that he was complying with his written warnings supports an inference of pretext. After plaintiff received his first written warning in December 2006, Byron and Janss held regular meetings with Roeloffs in human resources to discuss plaintiff's performance. Her notes from meetings held in January and April 2007 suggest Byron and Janss believed that plaintiff was in compliance with his warnings and

making progress toward his assigned projects. See PSOF, Ex. G at 133-37, 145-47. This is consistent with testimony from Byron and Janss that plaintiff complied with some of the terms of his warnings. See id., Ex. B at 189; id., Ex. D at 169, 181-82. It is also consistent with defendant's position that its actions were taken for performance-based reasons. Plaintiff's last project involved creating a model and presenting it to other econometricians the day before his final warning period ended in May 2007. He admits that two colleagues he did not work with regularly had concerns about the model and one felt that he reacted negatively to questions about his work. See PSOF ¶ 100-01. Plaintiff's evidence that he was in compliance with his written warnings in January and April 2007 is not sufficiently probative of pretext.[6]

Finally, plaintiff's evidence concerning the timing of defendant's actions and his complaints offered to support his prima facie case should also be considered in the pretext inquiry. See Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1069 (9th Cir. 2003). The timing involved does not support a finding of pretext for the reasons discussed above in the context of showing a causal connection.

The goal of the pretext inquiry is not to determine whether defendant made the best employment decisions or even well-considered ones. See Green v. Maricopa County Cmty. Coll. Sch. Dist., 265 F. Supp. 2d 1110, 1128 (D. Ariz. 2003). The goal is to determine the extent to which defendant's explanation of its actions is a guise for unlawful retaliation. Plaintiff has not met his burden to show sufficient evidence of pretext to create a genuine issue for trial. Therefore, we grant defendant's motion for summary judgment on plaintiff's retaliation claims.

**IV. Disparate Treatment**

---

[6] Plaintiff also requests that defendant's motion for summary judgment on his retaliation claims be denied under Rule 56(f)(1), Fed. R. Civ. P., because defendant did not timely disclose calender entries for Byron and Janss indicating another meeting with Roeloffs on May 10, 2007. Plaintiff fully deposed all three witnesses concerning their recollections of such a meeting. We deny this request.

Plaintiff's last claim is that defendant unlawfully subjected him to disparate treatment on the basis of race and national origin under Title VII, 42 U.S.C. § 2000e-2(a), with respect to his written warnings and 2006 performance review. Because plaintiff makes little effort to develop a prima facie case for this claim, it is not clear whether he relies on the McDonnell Douglas framework. Alternatively, he may produce direct or indirect evidence demonstrating that a discriminatory reason more likely than not motivated defendant. McGinest, 360 F.3d at 1122.

He offers evidence that he was the only one of around sixty AIM employees to receive a below expectations rating for 2006, despite a difficult environment for the division. Plaintiff maintains that this disparity suggests discrimination because "it is undisputed that feedback received by business partners about the need to make economic analysis easier to understand was directed at Bill Janss' team as a whole." Response at 15. Specifically, he concedes that the feedback was directed at him and Suarez, two of the four team members. See PSOF ¶ 42. Assuming plaintiff could establish a prima facie case, this evidence is insufficient to show that defendant's performance-based reasons for his written warnings and 2006 performance review are pretext for discrimination. And a reasonable trier of fact could not find that defendant was more likely than not motivated by a discriminatory reason on the basis of this evidence. Thus, we grant defendant's motion for summary judgment on plaintiff's Title VII disparate treatment claim.

### V. After-acquired Evidence Defense and Motion for Sanctions

In the alternative, defendant moves for summary judgment on an after-acquired evidence defense. If an employer shows that it would have terminated an employee for misconduct discovered after the fact, if it had known of it at the time, the employee may not seek reinstatement, front pay, or back pay beyond the date of discovery. O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 759 (9th Cir. 1996). Defendant contends that it would have terminated plaintiff for emailing work documents to a personal email account. The remedial significance of an after-acquired evidence defense is now moot because the propriety for plaintiff's termination is no longer in dispute. Plaintiff is not

eligible for reinstatement, front pay, or back pay beyond the date of his termination. Thus, we deny defendant's motion for summary judgment on its partial affirmative defense.

In response to defendant's asserted defense, plaintiff moves for sanctions under Rule 37(c)(1), Fed. R. Civ. P., on the grounds that defendant failed to supplement its disclosures and interrogatories with witnesses and evidence offered in support of its defense. Plaintiff contributed to defendant's failure by producing his electronic files late in the discovery period. In any case, this motion is now moot on the merits and a discretionary award of attorney's fees would be inappropriate given plaintiff's role in the matter. Plaintiff's motion for sanctions is denied.

**IT IS THEREFORE ORDERED DENYING** plaintiff's motion for leave to file a surreply (doc. 113).

**IT IS FURTHER ORDERED GRANTING IN PART** and **DENYING IN PART** defendant's motion for summary judgment (doc. 97). It is granted on plaintiff's retaliation claims and his Title VII disparate treatment claim. It is denied on plaintiff's § 1981 claim for failure to promote on the basis of race and defendant's after-acquired evidence defense.

**IT IS FURTHER ORDERED DENYING** plaintiff's motion for sanctions (doc. 99).

DATED this 5th day of February, 2010.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge