**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Henry Ekweani and Ijeamaka Ekweani, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>Ameriprise Financial, Inc.,<br><br>    Defendant. | No. CV-08-01101-PHX-FJM<br><br>**ORDER** |

The court has before it Ameriprise Financial, Inc.'s first motion in limine (doc. 126) and plaintiff Henry Ekweani's response (doc. 142). We heard argument on the motion at a final pretrial conference held on February 26, 2010.

**I.**

In August 2005, plaintiff applied for a promotion to an open director position in defendant's Asset and Information Management department. At the time, he was a Senior Manager-Economist in the same department. Around October 2005, defendant promoted another econometrician, William Janss, instead of plaintiff. As the new Director of

Transactional and Asset Management Analytics, Janss supervised a team of several employees, including plaintiff. In 2006, plaintiff complained that defendant failed to promote him because of his race. Defendant terminated him in May 2007.

In April 2008, plaintiff filed an employment discrimination action against defendant (doc. 1). He alleged discriminatory failure to promote in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and, with respect to defendant's subsequent conduct, disparate treatment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), -3(a). Plaintiff added a § 1981 retaliation claim through an amended complaint (doc. 11). In its answer, defendant raised an affirmative defense based on the statutes of limitations (doc. 26). In September 2009, defendant moved for summary judgment without mentioning a statute of limitations (doc. 97). On February 8, 2010, we denied defendant's motion on plaintiff's § 1981 failure to promote claim, and granted it on his other claims (doc. 124). On February 12, 2010, pursuant to our Rule 16 scheduling order, the parties filed a proposed pretrial order, trial briefs, and motions in limine in preparation for a final pretrial conference.

In its first motion in limine, defendant asserted that plaintiff's remaining § 1981 claim was barred by the statute of limitations because it was brought in 2008, over two years after defendant's 2005 promotion decision. Because § 1981 does not specify a statute of limitations, courts borrow the most appropriate state limitations period, which is two years in Arizona. Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 974 (9th Cir. 2004). If the § 1981 claim in question was first made possible by a federal statute enacted after December

1, 1990, however, a four-year period is provided by 28 U.S.C. § 1658. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382, 124 S. Ct. 1836, 1845 (2004). In its motion, defendant contended that the two-year period applied because a comparison between the positions plaintiff held and sought showed that his claim would have been viable before § 1981 was amended by the Civil Rights Act of 1991 ("1991 Act"), 42 U.S.C. § 1981(b).

In his written response on February 24, 2010, plaintiff agreed that a two-year statute of limitations would apply to his claim if it would have been viable before the 1991 Act. But he maintained that the applicable statute could not be determined as a matter of law in this case because there were unresolved questions of fact. He argued that evidence comparing the two positions to be presented at trial would allow a reasonable fact finder to decide that his claim was not viable before the 1991 Act, and thus not time barred.

At the final pretrial conference, we noted that it was highly unusual to raise a statute of limitations defense by way of a motion in limine. We indicated that, with trial looming, it was too late to decide a motion properly construed as one for summary judgment. We also noted, on the other hand, that the parties agreed that an evidentiary inquiry would be potentially case dispositive, which suggested that a resolution before trial would be more efficient for them. Accordingly, we solicited the parties' perspectives on the evidence that would be offered on the issue. Defendant provided a summary of what it characterized as undisputed facts about the positions. Plaintiff acknowledged that he did not dispute defendant's account, and instead offered several reasons why defendant's account did not present the entire story. He also represented that the court and not a jury would be the proper

fact finder on the statute of limitations issue. Finally, we provided plaintiff with an opportunity to make an offer of proof to support his views on the issue. He offered an additional legal argument based on the Lilly Ledbetter Fair Pay Act of 2009 ("Ledbetter Act"), Pub. L. No. 111-2, 123 Stat. 5.

We have discretion to entertain successive motions for summary judgment. Hoffman v. Tonnemacher, 593 F.3d 908, 909 (9th Cir. 2010). "Allowing a successive summary judgment motion potentially can save all concerned the far greater expenses of a trial." Id. at 912. Although the timing of defendant's motion was unfortunate, plaintiff had two weeks to consider it before the final pretrial conference. Given the weight of the undisputed facts offered at the conference and on summary judgment, we will treat defendant's first motion in limine as a successive motion for summary judgment and decide it on its merits.

## II.

Before the 1991 Act, a failure to promote claim was viable under § 1981, "[o]nly where the promotion [rose] to the level of an opportunity for a new and distinct relation between the employee and the employer." Patterson v. McClean Credit Union, 491 U.S. 164, 185, 109 S. Ct. 2363, 2377 (1989) (clarifying the scope of § 1981's original contracts provision). A "move from a non-supervisory position to a supervisory one" altered a contractual relationship enough to be actionable under § 1981. Sitgraves v. Allied-Signal, Inc., 953 F.2d 570, 574 (9th Cir. 1992). For supervisory employees, the inquiry was "whether a change in the nature of [their] supervisory functions would have significantly altered the nature of [their] relationship to management." Id. Thus, courts would "compare

- 4 -

the supervisory duties, salary, chain of responsibility, and additional responsibilities of each position." Rodriguez v. Gen. Motors Corp., 27 F.3d 396, 400 (9th Cir. 1994). In Rodriguez, the United States Court of Appeals for the Ninth Circuit concluded that a claim was not actionable where both positions involved supervision of other employees, the plaintiff did not show that there would be an increase in pay, both positions reported to the same supervisor, and the new position did not involve significant additional duties. Id.

In his written response to defendant's motion, plaintiff argued that receiving the promotion in question would not have sufficiently changed his employment relationship. He represented that he would testify that, as a Senior Manager, he already had supervisory responsibilities, including leadership with respect to David Suarez, David Sleigh, and the Asset Management Group, which was a business unit plaintiff's team supported. William Janss, who also was a Senior Manager before his promotion, offered a similar description of his supervisory duties in his former position: "I was informally supervising David Sly, and then I was also informally supervising David Suarez and I was supervising a – the work of a consultant in Minneapolis and his team." DSOF, Ex. 4 at 13. Plaintiff also pointed out that his immediate supervisor at the time, Vice President Vince Byron, would have remained the same had he been promoted instead of Janss. As it happened, he reported to Janss, who reported to Byron. PSOF ¶ 12. Lastly, plaintiff asserted that if he had been promoted to Director, he would still have had "duties as an econometrician building models to support asset management." Response at 2. For purposes of defendant's motion, we will assume that all of the facts that plaintiff offered are true.

Because we assume that plaintiff had supervisory duties when he was denied a promotion, the inquiry turns on a comparison of the supervisory duties, salary, chain of command, and additional responsibilities of each position. See Rodriguez, 27 F.3d at 400. At the final pretrial conference, defendant addressed the Rodriguez factors. It contended that, while plaintiff may have directed the work of others as Senior Manager, as Director he would have supervised the entire Transactional and Asset Management Analytics team, including Janss. According to defendant, his additional duties would have included providing employee performance reviews and imposing disciplinary action. On summary judgment, plaintiff admitted that Janss had three direct reports when he was promoted: plaintiff, David Suarez, and a computer specialist. PSOF ¶ 16. He also admitted that Janss was responsible for their annual performance reviews. Id. ¶ 17. Moreover, he admitted that it was the standard process for directors and vice presidents to meet at an alignment meeting to distribute employee ratings across a curve. Id. ¶ 20.

Next, defendant represented that plaintiff would have received a significant increase in salary had he been promoted. The director position offered a "Compensation Band 40." DSOF, Ex. 8 at 2. At his deposition, plaintiff agreed that he was a "band 35" as a Senior Manager. Id., Ex. 1 at 21. With respect to the § 1981 failure to promote claim in his complaint, plaintiff alleged that "defendant's conduct affected plaintiff's eligibility for higher bonus, merit increases and other employee benefits such as stock options." Second Amended Complaint at 5.

Turning to the chain of command factor, defendant argued that plaintiff would have

moved up the chain of command had he been promoted, even though he would still have reported to Byron. Defendant explained that the former Director of plaintiff's team, Steve Dickerson, left the company in 2005, and Byron temporarily assumed his responsibilities. Thus, becoming a Director under Byron and above the team would have been an elevation in the chain of command. In an affidavit on summary judgment, plaintiff also described "a position in senior management" as "a Director, Vice President or higher." PSOF, Ex. A at 3.

At the final pretrial conference, plaintiff said that he did not dispute defendant's factual account. He also explained that Janss, who apparently remains in the same position, no longer has direct reports. Plaintiff equated Janss's current lack of direct reports to his own in 2005. In his deposition, Janss testified that his last direct report left the company in the early fall of 2008. DSOF, Ex. 4 at 7-8. This is, of course, well beyond the relevant time period for a comparison between the positions in 2005.

Defendant's undisputed facts clearly show that the promotion plaintiff sought constituted "an opportunity for a new and distinct" relationship with defendant. Patterson, 491 U.S. at 185, 109 S. Ct. at 2377. Applying the Rodriguez factors, plaintiff's supervisory duties would have changed significantly. He would have been responsible for leading his own team, including evaluating direct reports through performance reviews and being involved in setting employee ratings. His salary would have increased, and he would have moved up in the chain of command. Even assuming that he already had supervisory duties and that he would have retained econometrician duties, plaintiff's relationship with

- 7 -

management would have been sufficiently altered. Even if the proper fact finder were a jury, no genuine issue of material fact remains based on the undisputed facts. Because plaintiff's § 1981 claim would have been viable before the 1991 Act, we conclude that the two-year limitations period applies instead of the four-year period from 28 U.S.C. § 1658.

**III.**

At the final pretrial conference, plaintiff raised a separate reason why his § 1981 claim was timely. He argued that the Ledbetter Act, Pub. L. No. 111-2, 123 Stat. 5, extended the statute of limitations for his failure to promote claim because he alleged that his salary would have increased. In relevant part, the Ledbetter Act amended and modified several civil rights statutes,[1] including Title VII, with the following language:

> For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A) (Title VII). The Ledbetter Act did not extend any statute of limitations. It changed what conduct could give rise to certain claims. With respect to Title VII, for example, Congress redefined as actionable otherwise nonactionable, nondiscriminatory compensation affected by prior compensation discrimination. Id. Thus,

---

[1] The Ledbetter Act amended Title VII, 42 U.S.C. §§ 2000e-5, -16, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(d), which modified the operation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12117(a), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794a.

the receipt of such compensation starts a new period in which an aggrieved person may act. Id.

Congress did not amend § 1981 through the Ledbetter Act. Although courts use Title VII as a guide in resolving § 1981 claims, Manatt v. Bank of Am., NA, 339 F.3d 792, 797 (9th Cir. 2003), we need not decide whether the legal principles from the Ledbetter Act apply to § 1981 compensation discrimination claims because plaintiff did not bring one. As he conceded when he raised the issue, the United States Court of Appeals for the District of Columbia recently interpreted "discriminatory compensation decision or other practice" and "discrimination in compensation" as used in the Ledbetter Act. Schuler v. PriceWaterHouseCoopers, LLP, 2010 WL 522345, at *5 (D.C. Cir. Feb. 16, 2010). In part because the Ledbetter Act targets compensation discrimination specifically, the D.C. Circuit concluded that "the decision whether to promote an employee to a higher paying position is not a 'compensation decision or other practice'" and a failure to promote claim "is not a claim of 'discrimination in compensation.'" Id. In the Ninth Circuit, alleging a failure to promote claim is not sufficient to state a claim for compensation discrimination. Williams v. Boeing Co., 517 F.3d 1120, 1131 (9th Cir. 2008) (absent allegations of salary inequities apart from promotion-related differences, references to pay increases accompanying promotions were insufficient to allege a separate claim for compensation discrimination). Therefore, the Ledbetter Act could not affect plaintiff's § 1981 claim. Because plaintiff's claim is untimely under the applicable two-year statute of limitations and it is not saved by the Ledbetter Act, we grant summary judgment in favor of defendant.

Construing defendant's first motion in limine (doc. 126) as one for summary judgment, **IT IS ORDERED GRANTING** summary judgment in favor of defendant and against plaintiff on plaintiff's remaining § 1981 claim.

All claims having been resolved by this order, together with our order filed on February 8, 2010 (doc. 124), the clerk shall enter final judgment in favor of defendant and against plaintiff. This moots the trial set for March 10, 2010.

DATED this 3rd day of March, 2010.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge